# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

In re:                                  )
                                        )
ALBERT P. GNADT,                        )    Case No. 11-10378-BFK
                                        )    Chapter 7
                Debtor.                 )

## MEMORANDUM OPINION

This matter is before the Court on the Chapter 7 Trustee's Objections to the Debtor's claim of Exemptions with respect to the Debtor's nonqualified deferred compensation plan established pursuant to I.R.C. § 409A (for purposes hereof, the Debtor's interest in his deferred compensation plan will be referred to as his "409A Plan"). Docket No. 247. The Debtor filed a Response. Docket No. 252. The Court heard argument from the parties on February 3, 2015. For the reasons stated below, the Court will sustain the Trustee's Objections to the Debtor's claim of Exemptions.

## Uncontested Facts

The Court makes the following findings of fact:

A. *The Debtor's 409A Plan.*

1. At the time that he filed for bankruptcy protection, the Debtor was employed by Kforce Services Corp. ("Kforce").

2. As a part of his compensation package, the Debtor had the opportunity to participate in the Kforce Executive Nonqualified Defined Benefit Plan (the aforementioned 409A Plan). Trustee's Ex. 2.

3. The 409A Plan states that it "is intended to be a nonqualified deferred compensation plan that complies with the provisions of Section 409A of the Internal Revenue Code ('the Code')." *Id.* at Sec. 1.

4. Consistent with IRC § 409A, the Plan provides that the following events are Qualified Distribution Events: (a) separation from service; (b) disability; (c) death; or (d) a Change in Control Event (a defined term under the Plan). *Id.* at Sec. 5.1–5.4.

5. Section 8.1 (Contractual Liability) of the Plan provides as follows:

> **8.1 Contractual Liability.** Unless otherwise elected in the Adoption Agreement, the Company shall be obligated to make all payments hereunder. This obligation shall constitute a contractual liability of the Company to the Participants, and such payments shall be made from the general funds of the Company. The Company shall not be required to establish or maintain any special or separate fund, or otherwise to segregate assets to assure that such payments shall be made, and the Participants shall not have any interest in any particular assets of the Company by reason of its obligations hereunder. To the extent that any person acquires a right to receive payment from the Company, such right shall be no greater than the right of an unsecured creditor of the Company.

*Id.* at Sec. 8.1.

6. The Plan also contains an anti-alienation provision, as follows:

> **10.1 Benefits Not Assignable.** No portion of any benefit credited or paid under the Plan with respect to any Participant shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void, nor shall any portion of such benefit be in any manner payable to any assignee, receiver or any one trustee, or be liable for his debts, contracts, liabilities, engagements or torts. Notwithstanding the foregoing, in the event that all or any portion of the benefit of a Participant is transferred to the former Spouse of the Participant incident to a divorce, the Committee shall maintain such amount for the benefit of the former Spouse until distributed in the manner required by an order of any court having jurisdiction over the divorce, and the former Spouse shall be entitled to the same rights as the Participant with respect to such benefit.

*Id.* at Sec. 10.1.

7. The description of the Plan, entitled "The Kforce Non-Qualified Deferred Compensation Plan Essentials," which is not a contract but the Court views it as reflective of the understanding of the parties, states in part as follows:

> This Plan is **NOT** Formally Funded.
>
> Under federal law, non-qualified deferred compensation plans cannot be formally funded without triggering adverse tax consequences. Your Plan balance and any earnings thereon will be reflected on the Company's books as general unsecured obligations of the Company. All payments under this Plan will come from the general assets of the Company.
>
> Placing Assets in a Rabbi Trust Offers Some Protection.
>
> The Company has placed assets to pay Plan benefits in a Rabbi Trust to protect the assets against a change of control in the ownership or management of the Company. This provides that the assets may only be used to pay the promised benefit to Plan participants, except in the event of the Company's bankruptcy or insolvency. In the event of such an occurrence, Rabbi Trust assets are treated like all other corporate assets and are subject to the claims of all general creditors of the Company. You will be considered a general creditor and will have no greater rights to your balance than other general creditors.

Trustee's Ex. 1 at 17.

8. Prior to filing for bankruptcy, the Debtor had accrued $30,154.99 in deferred compensation in his 409A Plan.

*B. The Debtor's Chapter 11 Case.*

9. The Debtor filed a voluntary petition under Chapter 11 with this Court on January 18, 2011. Docket No. 1.

10. In his Schedule C, the Debtor listed as exempt property his interest in the Kforce 409A Plan, in the amount of $30,154.99. Docket No. 26. The basis for the claim of exemption was Va. Code § 34-34. No party in interest filed an objection to the Debtor's claim of exemptions, at that time.

11. The Court approved the Debtor's Second Amended Disclosure Statement on October 16, 2013. Docket No. 152.

12. The Debtor filed a Third Amended Plan on March 24, 2014. Docket No. 171.

13. A confirmation hearing on the Debtor's Third Amended Plan was set for June 4, 2014.

14. In the meantime, the U.S. Trustee filed a Motion to Convert the case to Chapter 7. Docket No. 183.

15. When the case came before the Court on June 4th, Debtor's counsel advised the Court that the Debtor had just lost his employment with Kforce. The Debtor conceded that his Third Amended Plan was not feasible, and he consented to the U.S. Trustee's Motion to Convert the case to Chapter 7. The Court entered an Order converting the case from Chapter 11 to Chapter 7 on June 11, 2014. Docket No. 206.

*C. The Trustee's Objections to the Debtor's Claim of Exemptions.*

16. Ms. Meiburger was appointed as the Chapter 7 Trustee. Docket No. 207.

17. The meeting of creditors in the Chapter 7 case initially was scheduled for July 10, 2014. Docket No. 207. It was adjourned five times, at the request of the Chapter 7 Trustee. Docket Nos. 217–20, 225.

18. The Trustee filed a Motion for a Rule 2004 Examination of Kforce on September 12, 2014. Docket No. 221. This Motion was granted by Order entered on October 1, 2014. Docket No. 226.

19. The meeting of creditors was concluded on October 2, 2014.

20. The time for the Trustee to object to the Debtor's claim of exemptions under Bankruptcy Rules 4003(b) and 1019(2)(B) would have expired on November 3, 2014.[1]

21. On November 3, 2014, the Trustee filed a Motion to Extend Time to Object to the Debtor's Exemptions. Docket No. 238. This was granted, without any objection from the Debtor, by Order entered on December 3, 2014. Docket No. 241. This Order extended the time to object to the Debtor's exemptions through and including December 5, 2014. *Id.*

22. On December 5, 2014, the Trustee filed a Second Motion to Extend Time to Object to the Debtor's Exemptions. Docket No. 242. This Motion was granted, with the consent of the Debtor ("Seen and Agreed"), by Order entered on December 8, 2014. Docket No. 244. This Order extended the time to object through and including January 16, 2015. *Id.*

23. The Trustee filed her Objections to the Debtor's claim of Exemptions in his 409A Plan on January 14, 2015. Docket No. 247.

### Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this District entered August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), and (B) (exemptions from property of the estate).

Before addressing the substance of the parties' arguments, the Court will take a brief detour into the procedural posture of the case, and what is at issue here. When the Debtor originally filed his bankruptcy petition, he claimed an exemption in his 409A Plan pursuant to

---

[1] The 30th day from the conclusion of the meeting of creditors on October 2nd was November 1, 2014. However, November 1st was a Saturday, so the deadline carried over to Monday, November 3rd. *See* FED. R. BANKR. P. 9006(a)(1)(C) ("When the period is stated in days or a longer unit of time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday.")

Va. Code § 34-34. Docket No. 26. The Trustee objected on the ground that Section 34-34 does not include Section 409A of the Internal Revenue Code as one of the enumerated sections entitled to an exemption. *See* VA. CODE § 34-34(A) ("'Retirement plan' means a plan, account, or arrangement that is intended to satisfy the requirements of United States Internal Revenue Code §§ 401, 403 (a), 403 (b), 408, 408 A, 409 (as in effect prior to repeal by United States P.L. 98-369), or § 457.")[2] In response, the Debtor shifted gears, and claimed that his interest in his 409A Plan was not property of the estate under Bankruptcy Code Section 541(c)(2), as interpreted by the Supreme Court in *Patterson v. Shumate*, 504 U.S. 753 (1992), or alternatively, that it is exempt as a spendthrift trust under State law. The Trustee disagrees that the property is excluded from the estate under Section 541(c)(2), or that the Debtor's 409A Plan constitutes a spendthrift trust. She concedes, however, that the sum of $30,154.99 in the Debtor's 409A Plan on the date of the bankruptcy filing represents the product of the Debtor's wages, bonuses and commissions and that, therefore, the Debtor is entitled to amend his State exemptions to claim that 75% of this amount is exempt pursuant to Va. Code § 34-29 (Maximum portion of disposable earnings subject to garnishment). *See* FED. R. BANKR. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.") The questions presented, in light of the Trustee's concession, are whether the remaining 25%, or $7,538.75, is either: (a) excluded from property of the estate under Bankruptcy Code Section 541(c)(2) and *Patterson v. Shumate*; or (b) exempt as a

---

[2] Nor is Section 409A among the IRC sections identified in Bankruptcy Code Sections 522(b)(2)(C) (providing for an exemption for retirement funds that are exempt from taxation under IRC 401, 403, 408, 408A, 414, 457 or 501(a)), and 522(d)(12) (federal exemptions, excluding from property of the estate retirement funds under the same IRC Sections). Section 409A also is not among the tax-deferred vehicles identified in Bankruptcy Code Section 541(b)(7), which was added as part of the 2005 BAPCPA Amendments to the Bankruptcy Code in order to protect certain kinds of interests in property. *See* 11 U.S.C. § 541(b)(7) (property of the estate excludes amounts withheld by an employer for payment as contributions to employee benefit plans under IRC 414(d), deferred compensation plans under IRC 457, tax-deferred annuities under IRC 403(b), or certain health insurance plans).

spendthrift trust under State law. For the reasons stated below, the Court finds that the remaining 25% of the funds are property of the bankruptcy estate, and are not exempt property.

> I.   **The Trustee has the Ability to Object to the Debtor's Claim of Exemption Pursuant to Bankruptcy Rule 1019(2)(B).**

As a threshold matter, the Debtor argues that the Trustee does not have the ability to object to the Debtor's claim of exemption in the Kforce 409A Plan. The Debtor claims that the finality of a debtor's claim of exemption pursuant to Bankruptcy Code Section 522(l) and Bankruptcy Rule 4003(b) renders unenforceable the extension of time for objecting to exemptions pursuant to Bankruptcy Rule 1019(2)(B). Section 522(l) of the Code provides that the debtor shall file a list of exemptions, and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522 (l). Bankruptcy Rule 4003(b)(1) provides that a party in interest may file an objection to the debtor's list of exemptions within 30 days after the first meeting of creditors is concluded, or within 30 days after any amendment to the list or supplemental schedule is filed. FED. R. BANKR. P. 4003(b)(1). Subsection (B) of Bankruptcy Rule 1019(2), added to the Rule in 2010, states that when a case is converted to Chapter 7 a new time period for filing objections to claims of exemptions shall commence under Rule 4003(b), with certain exceptions not relevant here. FED. R. BANKR. P. 1019(b)(2)(B). In the Debtor's view, there is an insoluble conflict between Bankruptcy Code Section 522(l) and Rule 1019(b)(2)(B).

First, the Court holds that there is no conflict between Section 522(l) and Bankruptcy Rule 1019(2)(B) that would render Rule 1019 unenforceable. When a debtor commences a bankruptcy case, an estate comprised of all of the debtor's interests in property is created. 11 U.S.C. § 541(a). Under Section 522(b)(1), a debtor may claim certain property as exempt from such bankruptcy estate, and such "property . . . will be excluded from the bankruptcy estate

7

'[u]nless a party in interest' objects." *Schwab v. Reilly*, 560 U.S. 770, 774 (2010) (quoting 11 U.S.C. § 522(l)). Absent an objection, "the property claimed as exempt . . . is exempt," 11 U.S.C. § 522(l), "whether or not [the debtor] had a colorable statutory basis for claiming it." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992).

In the Rules Enabling Act, Congress empowered the Supreme Court of the United States to prescribe rules for cases under Title 11 through its adoption of Section 2075 of Title 28, which provides:

> The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.
>
> Such rules shall not abridge, enlarge, or modify any substantive right.
>
> The Supreme Court shall transmit to Congress not later than May 1 of the year in which a rule prescribed under this section is to become effective a copy of the proposed rule. The rule shall take effect no earlier than December 1 of the year in which it is transmitted to Congress unless otherwise provided by law.

28 U.S.C. § 2075. Rules promulgated pursuant to Section 2075 have the force of law. *In re Raggie*, 389 B.R. 309, 312 (Bankr. E.D.N.Y. 2008); *In re Teknek, LLC*, 354 B.R. 181, 191 (Bankr. N.D. Ill. 2006). Although the Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right," 28 U.S.C. § 2075, a "party contending that a court rule violates substantive rights bears a heavy burden of proof." *In re Stoecker*, 151 B.R. 989, 1004 (Bankr. N.D. Ill. 1992) (reversed on other grounds).

In this case, the Debtor argues that Rule 1019's extension of time to file objections to a debtor's exemptions is inconsistent with the finality rule contained in Section 522(l). Rule 1019(2)(B), the Debtor claims, improperly subjects a debtor to perpetual exemption objections because Section 521 provides that "property claimed as exempt . . . is exempt." The Debtor, however, fails to recognize that Section 522(l) "does not specify the time for objecting to a

8

claimed exemption." *Taylor*, 503 U.S. at 642. Section 522(l) provides only that "*[u]nless a party in interest objects*, the property claimed as exempt . . . is exempt." Section 522(l) does not address *when* an objection may be made to a debtor's claim of exemptions. Instead, the timing is prescribed by Rule 4003, and upon conversion of the case, by Rule 1019. Reading the Bankruptcy Code and Rules together, a debtor's property claimed as exempt is exempt, unless a party in interest successfully objects to the exemption under Rule 4003, or under Rule 1019 upon conversion of the case. The Court holds that Bankruptcy Rule 1019 is not inconsistent with Bankruptcy Code Section 522(l).

Second, notwithstanding any purported inconsistency between Section 522(l) and Rule 1019(2)(B), the Debtor has waived his right to raise an argument concerning the timeliness of the Trustee's objection. The Trustee successfully obtained two extensions to file an objection. The first extension was granted without objection from the Debtor, and the second was granted with the Debtor's express consent. Docket Nos. 241, 244. The Court finds that the Debtor waived his Section 522(l) argument by not raising it on either occasion.

## II. The Debtor's Interest in the Property Was Vested at the Time he Filed his Bankruptcy Petition.

The Debtor next claims that he had no vested interest in the funds in his 409A Plan at the time that he filed his bankruptcy petition. The 409A Plan provides that a number of events, such as death or separation of service, can trigger a payout. The Debtor argues that because none of the triggering events occurred as of the Debtor's petition, the funds held pursuant to the Plan were not property of the Debtor's estate at the time of his petition.

Courts have consistently held that contingent interests are not excluded from property of the bankruptcy estate where they are "sufficiently rooted in the [debtor's] pre-bankruptcy past[.]" *Segal v. Rochelle*, 382 U.S. 375, 380 (1966) (Bankruptcy Act case—"the term 'property' has

been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed"); *In re Shearin*, 224 F.3d 346, 351–52 (4th Cir. 2000) (holding a partnership interest and the proceeds thereof to be property of the estate). The Fourth Circuit has held that:

> Pre-petition assets . . . are those assets rooted in the debtor's pre-petition activities, including any proceeds that may flow from those assets in the future. These assets belong to the estate and ultimately to the creditors. Post-petition assets are those that result from the debtor's postpetition activities and are his to keep free and clear of the bankruptcy proceeding.

*In re Andrews*, 80 F.3d 906, 910 (4th Cir. 1996). This rule has been consistently applied by the courts in the context of deferred employee compensation. *See In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984) (lump sum severance payment from pre-petition contract—"by including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time"); *In re Powell*, 511 B.R. 107, 112 (Bankr. C.D. Ill. 2014) (debtor's interest in profit sharing plan—"where the future payment is linked, at least in part, to services rendered prepetition, the 'sufficiently rooted' inquiry is ordinarily satisfied"); *In re Jokiel*, 447 B.R. 868, 872–73 (Bankr. N.D. Ill. 2011) (severance payment was sufficiently rooted in debtor's pre-bankruptcy past).[3]

      In this case, the Debtor's interest in the 409A Plan funds did not depend on any future services to be performed. Instead, like the payments due under the debtor's non-competition agreement in *Andrews*, the Debtor's interest in the 409A Plan funds stemmed from events that occurred prior to the Debtor's bankruptcy filing, and are "sufficiently rooted in the [Debtor's]

---

[3] It should be noted that all of the $30,154.99 in the Debtor's 409A Plan was earned by the Debtor pre-petition. Accordingly, none of the earnings are excluded from the estate as post-petition earnings under Section 541(a)(6) of the Bankruptcy Code.

pre-bankruptcy past[.]" *In re Andrews*, 80 F.3d at 910. The "fact that payment of [the funds] was subject to certain risks, like insolvency of the company, does not render the claim any less fixed, accrued or vested." *In re The Colonial BancGroup, Inc.*, 436 B.R. 695, 707 (Bankr. M.D. Ala. 2010).

The Court finds that the Debtor's interest in his 409A Plan was vested and was sufficiently rooted in his pre-bankruptcy past at the time that he filed for bankruptcy protection.

**III.    The Debtor's Interest in his 409A Plan is Property of the Bankruptcy Estate, and is Not Exempt Under State Law.**

The Debtor claims that the remaining 25% of his interest in his 409A Plan is either excluded from the bankruptcy estate under Bankruptcy Code Section 541(c)(2) and *Patterson v. Shumate*, or is exempt property because it is held in a spendthrift trust as a matter of State law. The Court finds that the Debtor's claims fail on both counts.

*A.    Bankruptcy Code Section 541(c)(2) and Patterson v. Shumate*.

Bankruptcy Code Section 541(a)(1) provides that property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held[.]" 11 U.S.C. § 541(a)(1). This very broad, all-encompassing definition of property of the estate is limited by certain exceptions that follow in subsections (b), (c) and (d). Relevant to our purposes, Subsection (c)(2) provides as follows:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2).

The Supreme Court's opinion in *Patterson v. Shumate* addressed two related issues under Section 541(c)(2). First, the Court considered whether the phrase "applicable nonbankruptcy law" was limited to State law, or whether it included federal statutes such as ERISA. The Court

11

held that Section 541(c)(2) was not limited in its application to State law, and that ERISA qualified as "applicable nonbankruptcy law." *Patterson*, 504 U.S. at 759. Second, the Court decided whether the anti-alienation provision in the particular ERISA-qualified plan at issue satisfied the terms of Section 541(c)(2). The Court held that the plan's anti-alienation provision satisfied the requirements of Section 541(c)(2). *Id.* at 760.

Section 541(c)(2) is not limited by its terms to State law spendthrift trusts and ERISA-qualified pension plans. For example, a debtor's interest in a State university's pension plan, which is exempt from regulation under ERISA (*See* 29 U.S.C. § 1003(b)(1)), has been held to be excluded from property of the estate under Section 541(c)(2). *See In re Quinn*, 327 B.R. 818, 828–29 (W.D. Mich. 2005). The courts generally agree that the inquiry is a three-part test: (1) whether the debtor has a beneficial interest in a trust; (2) whether there is a restriction on alienation of the debtor's beneficial interest; and (3) whether the restriction on alienation is enforceable under applicable non-bankruptcy law. *Taunt v. Gen. Ret. Sys. of the City of Detroit (In re Wilcox)*, 233 F.3d 899, 904 (6th Cir. 2000); *Rhiel v. Adams (In re Adams)*, 302 B.R. 535, 539 (B.A.P. 6th Cir. 2003); *In re Hunter*, 380 B.R. 753, 764 (Bankr. S.D. Ohio 2008); *Hill v. Dobin*, 358 B.R. 130, 134 (D. N.J. 2006). In this case, the Court finds that the Debtor's interest in his 409A Plan is not excluded from property of the estate under Section 541(c)(2), for two reasons. First, there is no trust involved. And second, while the 409A Plan at issue has an anti-alienation provision, there is no reason to conclude that the anti-alienation provision is enforceable under applicable non-bankruptcy law.[4]

---

[4] There is some disagreement in the cases as to whether an express trust is required. *See Skiba v. Laher (In re Laher)*, 496 F.3d 279, 291 (3d Cir. 2007) ("[w]e necessarily leave for another day the question of whether the word 'trust' as used in § 541(c)(2) may be read in light of *Patterson* to include a category of funds tantamount or analogous to trusts"); *Rhiel v. Adams (In re Adams)*, 302 B.R. 535, 547–48 (B.A.P. 6th Cir. 2003) (Latta, J., dissenting); *In re Quinn,* 327 B.R. at 828–29 ("[t]his Court agrees with Judge Latta's observations and finds them applicable in this case"). This Court, however, views the abandonment of the express trust requirement to be

*1. The 409A Plan at Issue is not a Trust.*

The term "trust" is not defined by the Bankruptcy Code. As a general proposition, the bankruptcy courts will look to State law for determinations of what is, or is not, property of the estate. *Butner v. U.S.*, 440 U.S. 48, 56–57 (1979). The Restatement (Second) of Trusts provides that:

> A trust . . . is fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.

Restatement (Second) of Trusts § 2 (1959).

The Fourth Circuit has held, in the context of whether a debt is dischargeable under Section 523(a)(4) of the Bankruptcy Code (debts incurred as a result of defalcation of a fiduciary duty), as follows:

> Under Virginia law, "[a]n express trust is based on the declared intention of the trustor," manifested either in writing or through the parties' actions. Although the parties' use of the word "trust" is to be given great weight, it is not determinative. All that is necessary is the "unequivocal" intent "'that the legal estate [be] vested in one person, to be held in some manner or for some purpose on behalf of another.'" At bottom, "[i]f the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If[, however,] the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created."

*Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 498–99 (4th Cir. 2008) (citations omitted). *See also In re Khan*, 461 B.R. 343, 348 (E.D. Va. 2011) (whether or not a trust is created depends on: "(i) the designated trustee lacks legal title to the property at issue; (ii) the

---

inconsistent with the plain language of Section 541(c)(2), which requires that "a beneficial interest of the debtor in a trust" be at issue. In the Court's view, cases like *Quinn* and Judge Latta's dissent in *Adams* have the effect of reading the trust requirement of Section 541(c)(2) out of the statute altogether.

trustee is restricted in the use of the property; and (iii) the property remains segregated from the trustee's own property").[5]

In this case, there is no restriction on Kforce's use of the property. To the contrary, Section 8.1 of the Kforce Executive NonQualified Defined Benefit Plan provides that the obligations of the company are "a contractual liability," and that "payments shall be made from the general funds of the Company." Trustee's Ex. 2 at Sec. 8.1. This Section goes on to state:

> The Company shall not be required to establish or maintain any special or separate fund, or otherwise to segregate assets to assure that such payments shall be made, and the Participants shall not have any interest in any particular assets of the Company by reason of its obligations hereunder.

*Id.*

Section 409A plans simply do not enjoy the same kind of fiduciary relationship between the employer and employee as do ERISA-qualified pension plans. *See* 26 U.S.C. § 401(a) ("A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section . . . ."); 29 U.S.C. § 1102(a)(1) (requiring that every employee benefit plan "shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan); 29 U.S.C. § 1103 (except as provided, "all assets of an employee benefit plan shall be held in trust by one or more trustees"); 29 U.S.C. § 1104 (fiduciary duties). There are no corresponding fiduciary duties (including any duty of segregation of funds) in Section 409A and its accompanying Regulations.

---

[5] The holding in *Strack* that "'[n]egligence or even an innocent mistake which results in . . . [the] failure to account is sufficient'" under Section 523(a)(4), *In re Strack*, 524 F.3d at 498 n.7 (quoting *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 811 (4th Cir. 2001)), is no longer good law in light of the Supreme Court's opinion in *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013).

For the foregoing reasons, the Court finds that the Debtor's 409A Plan is not a trust, and therefore, cannot come within the exclusion provided by Section 541(c)(2) of the Code for property of the estate.

### 2. *The Anti-Alienation Provision is Not Enforceable Under Applicable Non-Bankruptcy Law.*

The Debtor's 409A Plan unquestionably contains an anti-alienation provision. Trustee's Ex. 2 at Sec. 10.1. The question is whether the anti-alienation provision is enforceable under non-bankruptcy law. *Patterson*, 504 U.S. at 760 ("[m]oreover, these transfer restrictions are 'enforceable' as required by § 541(c)(2)"); *In re Hanes*, 162 B.R. 733, 739 (Bankr. E.D. Va. 1994) ("it is not enough under § 541(c)(2) of the Bankruptcy Code merely to require pension plans to include non-alienation clauses. Section 541(c)(2) will shield a beneficial interest in a trust only when the non-alienation provision is *enforceable* under applicable bankruptcy law.")

Once again, the comparison to ERISA-qualified pension plans is useful here. Anti-alienation language is required by Section 401(a)(13) of the Internal Revenue Code. 26 U.S.C. § 401(a)(13) ("A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that the benefits provided under the plan may not be assigned or alienated.") *See also* 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that the benefits provided under the plan may not be assigned or alienated.") There are no corresponding provisions in Section 409A or its accompanying IRS Regulations that would lead to the conclusion that the anti-alienation provision in the Debtor's 409A Plan is enforceable, and the Debtor has not pointed the Court to any language in Section 409A or its accompanying Regulations that would make the anti-alientation language in this plan enforceable.

The Court concludes that the anti-alienation provision in the Debtor's 409A Plan is not an enforceable provision under applicable non-bankruptcy law.

15

*B. Applicable State Law.*

The Debtor claims, alternatively, that if his 409A Plan is property of the estate, it is exempt as a spendthrift trust under applicable non-bankruptcy law. The Bankruptcy Code provides for federal exemptions and, in the case of persons residing in States that have opted out of the federal exemption scheme, State law exemptions. 11 U.S.C. §§ 522(b)(1) and (2). Virginia has opted out of the federal exemptions scheme. VA. CODE § 34-3.1. The Court, therefore, will analyze the Debtor's claim of exemption under Virginia law.

Rather than rely on Va. Code § 34-34 (which, as noted, does not include Section 409A plans as one of the enumerated types of exempt property), the Debtor relies on the Virginia Spendthrift Trust statute. Section 541(c)(2) applies to State-law spendthrift trusts. *Patterson*, 504 U.S. at 758 ("[t]he natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law"); *Levin v. Wachovia Bank*, 436 F. App'x 175, 179 (4th Cir. 2011) (indicating that Section 541(c)(2) "excludes from the property of the bankruptcy estate interests in trust that are protected under a spendthrift clause that is enforceable under applicable state law").

The Court finds that the Debtor's 409A Plan is not exempt as a spendthrift trust under State law because the Plan cannot accurately be described as a trust under State law. The Virginia Supreme Court has held with respect to the creation of a trust:

> [T]he term "trust" refers not to a separate legal entity but to "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, *which arises as a result of a manifestation of an intention to create it.*" When such a trust exists, it is not a separate legal entity being referred to, but a fiduciary relationship between already existing parties, be they real persons or other legal entities.

*Jiminez v. Corr*, 764 S.E.2d 115, 122 (Va. 2014) (quoting Restatement (Second) of Trusts § 2 (1959)) (emphasis added).

No intent to create a trust was manifested in connection with the creation of the 409A Plan in this case. There is no identifiable *res* for the trust. *See* Trustee's Ex. 2 at Sec. 8.1 ("The Company shall not be required to establish or maintain any special or separate fund, or otherwise to segregate assets to assure that such payments shall be made, and the Participants shall not have any interest in any particular assets of the Company by reason of its obligations hereunder.") The employer was not required to hold the funds in trust. *Id*. The employee's rights are considered to be "no greater than the right of an unsecured creditor of the Company." *Id.* The whole structure of the Debtor's 409A Plan is that of debtor-creditor, giving rise to contractual claims in the event of a breach, not that of a fiduciary and its beneficiary.

Finally, assuming that the Debtor's 409A Plan could be described as a trust, it would be a self-settled trust, and therefore, unenforceable as against the Debtor's creditors. Spendthrift trusts are creatures of statute. In 1919, Virginia enacted Code Section 5157, recognizing the enforceability of spendthrift trusts. Prior to that, spendthrift trusts were considered to be a violation of public policy. *See Hutchinson v. Maxwell*, 40 S.E. 655, 658 (Va. 1902); *Sheridan v. Krause*, 172 S.E. 508, 514 (Va. 1934) (noting the statutory change from the common law). As this Court has previously held with respect to self-settled trusts: "where the beneficiary retains control over the use and disposition of the trust assets (in statutory terms, a 'power of withdrawal'), the trust is treated as a revocable trust . . . . For revocable trusts, the property of the trust is subject to claims of the settlor's creditors, at least during the lifetime of the settlor." *In re Salahi*, No. 11–16621–BFK, 2012 WL 1438213, at *3 (Bankr. E.D. Va. Apr. 25, 2012) (quoting VA. CODE § 55–545.05(A)(1). *See also Robbins v. Webster (In re Robbins)*, 826 F.2d 293, 295 (4th Cir. 1987) (applying Maryland law—"[t]he general rule is stated in Restatement (Second) of

17

Trusts § 156(2) (1957). The creditors of a settlor may reach the assets of a spendthrift trust to the maximum extent that the trustee might apply them for the use and benefit of the settlors"); *U.S. v. Ritter*, 558 F.2d 1165, 1167–68 (4th Cir. 1977) (applying West Virginia law, and noting: "[b]y the great weight of authority it is held that (where the settlor himself has a general power of appointment) the settlor is substantially the owner of the property, and that his creditors can reach it whether he exercises the power or fails to exercise it . . . "). In this case, the Debtor directed that the funds be deposited into his 409A Plan, and the Debtor retained the ability to access the funds at his discretion. One of the Plan's defined "Qualifying Distribution Events," as in all 409A plans, was the Debtor's separation from employment with Kforce. Tr. Ex. 2 at Sec. 2.29. For this reason, the Court concludes that if the Debtor's interest in his 409A Plan could be described as a spendthrift trust under State law, it would be a self-settled trust and therefore, unenforceable as against the Trustee.

## Conclusion

For the foregoing reasons, the Court will issue a separate Order sustaining the Trustee's Objections to the Debtor's claim of Exemptions in his Section 409A Plan, and will order the turnover of the funds to the Trustee.

Date: May 7 2015

Alexandria, Virginia

/s/ Brian F. Kenney
Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: May 7, 2015

<u>Copies to</u>:

Albert P Gnadt
803 Gunpowder Road
Leesburg, VA 20175
*Chapter 7 Debtor*

Jeffrey M. Sherman, Esquire
Law Offices of Jeffrey M. Sherman
1600 N. Oak Street
Suite 1826
Arlington, VA 22209
*Counsel for Chapter 7 Debtor*

Janet M. Meiburger, Esquire
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101-5726
*Chapter 7 Trustee*